Filed 8/8/14  In re Juan O. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

|  |  |
|---|---|
| In re JUAN O., a Person Coming Under the Juvenile Court Law. | D064957 |
| THE PEOPLE,  Plaintiff and Respondent,  v.  JUAN O.,  Defendant and Appellant. | (Super. Ct. No. J228067) |

APPEAL from a judgment of the Superior Court of San Diego County, Browder A. Willis III, and Carlos O. Armour, Judges.  Affirmed as modified.

Dawn S. Mortazavi, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Senior Assistant Attorney General, A. Natasha Cortina and Ryan H. Peeck, Deputy Attorneys General for Plaintiff and Respondent.

## INTRODUCTION

Juan O. admitted willfully and unlawfully resisting, delaying and obstructing a public officer during the discharge of the officer's duty. (Pen. Code, § 148, subd. (a)(1).) The juvenile court made Juan a ward of the court and placed him on formal probation in the Short Term Offender Program for up to 90 days. The conditions of Juan's probation included a provision stating, "The minor is not to use force, threats, or violence on another person."

Juan appeals, contending we must reverse the judgment because the court failed to inform him of his constitutional rights before accepting his admission. He further contends we must modify the use of force probation condition because it unconstitutionally precludes him from using force in lawful self-defense.

The People concede the latter point and we order the court to modify the probation condition to state, "The minor is not to use force, threats, or violence on another person except in lawful self-defense." In all other respects, we affirm the judgment.

## BACKGROUND[1]

A police officer responded to a call reporting juveniles smoking marijuana. When the officer arrived, the officer saw Juan and another juvenile sitting on a wall and detained them both. Juan's mother took custody of him. She told the officer, Juan was out of control, he did not listen to her, and she was afraid of him. She agreed to enroll him in the police department's diversion program.

---

[1] The background facts are taken from the probation officer's social study.

2

Before the officer left the scene, Juan's mother flagged the officer down because Juan had locked her out of their apartment. The officer instructed Juan to open the front door, but he refused. He eventually opened the door, then ran to the bathroom and locked that door. His mother pried open the door with a knife. Once the door was open, the officer instructed Juan to get out of the shower. He refused, stating he did not have to obey the officer. When the officer attempted to take Juan by the arm, Juan pulled away. The officer then grabbed Juan's wrists, placed him in custody, and booked him into a juvenile detention facility.

DISCUSSION

I

*Waiver of Constitutional Rights*

A

At his first court appearance, Juan's counsel informed the court she had advised Juan of his constitutional and statutory rights. The court subsequently noted, without any objection, "Juan's been advised of the charges against him, his constitutional rights and the nature of the juvenile proceedings. He waives further reading of the petition and his constitutional rights, enters a denial for the record."

At the readiness hearing, Juan's counsel asked the court to set the matter for an adjudication hearing. Before the readiness hearing concluded, Juan interjected, "Your honor, if I could make a last moment request for—." The court interrupted him and suggested, "Why don't you ask your attorney first." He responded, "Because like changing my mind about pleading guilty—." The court replied, "Juan, hang on a second.

3

It's important that you only talk to your attorney about what you're going to say first and make sure that she lets you talk to me.  Okay?"  He acknowledged, "I understand."

At the adjudication hearing, Juan's counsel informed the court Juan wanted to admit one of the allegations against him.  The court and Juan engaged in the following colloquy:

> "[THE COURT:]  So Juan, is that correct, that you are ready, willing and able to admit . . . the violation of Penal Code section 148.
>
> "THE MINOR:  Yes, your honor.  [¶] . . . [¶]
>
> "THE COURT:  Have you had any drugs, alcohol or medication in the last 24 hours that would make it hard for you to pay attention?
>
> "THE MINOR:  No, your honor.
>
> "THE COURT:  Did you have an opportunity to speak to your attorney?
>
> "THE MINOR:  Yes, your honor.
>
> "THE COURT:  When you had your conversation with your [attorney], were you able to understand everything that she was explaining to you?
>
> "THE MINOR:  Yes, your honor.
>
> "THE COURT:  Do you understand that you have a right to go to trial on this petition?
>
> "THE MINOR:  Yes, your honor.
>
> "THE COURT:  Your attorney has indicated to me that you're willing to give up your right to go to trial in order to admit to [violating Penal Code section 148]; is that correct?
>
> "[MINOR]:  Yes, your honor."

After discussing the potential immigration consequences of and dispositions for his admission, the court inquired:

> "THE COURT:  Keeping that in mind and keeping in mind everything that your attorney has explained to you, are you still willing to make your admission to [violating of Penal Code section 148]?
>
> "THE MINOR:  Yes, your honor."

The court then accepted Juan's admission, finding he gave it freely and voluntarily.

B

Before the court accepted Juan's admission, the court was required to advise him of what are commonly referred to as *Boykin-Tahl*[2] rights:  the privilege against compulsory self-incrimination, the right to a trial, and the right to confront accusers. (*People v. Mosby* (2004) 33 Cal.4th 353, 359 (*Mosby*).)  The court's advisements were incomplete because the court only advised Juan of his right to a trial.  Juan contends the court's error requires reversal of the court's judgment.  We disagree.

The court's failure to expressly advise Juan and obtain his waiver of all three *Boykin-Tahl* rights before accepting his admission does not require reversal of the court's judgment as long as the record affirmatively shows the admission was knowing, intelligent, and voluntary under the totality of the circumstances. (*Mosby*, *supra*, at pp. 360-361.)  One circumstance weighing in favor of upholding the court's judgment is Juan's counsel statement on the record at Juan's first appearance that she had advised him

---

2       See *Boykin v. Alabama* (1969) 395 U.S. 238, 243 & *In re Tahl* (1969) 1 Cal.3d 122, 132.

of his constitutional rights. Contrary to Juan's assertion, *People v. Christian* (2005) 125 Cal.App.4th 688 (*Christian*) does not preclude our consideration of this statement. *Christian* stands for the proposition an appellate court may not presume from the mere fact a defendant had a lengthy pre-plea conversation with his counsel that the conversation included a discussion of the defendant's *Boykin-Tahl* rights. (*Christian*, *supra*, at p. 698.) It has no application where, as here, counsel specifically indicated on the record she had discussed Juan's constitutional rights with him.

Another circumstance weighing in favor of upholding the court's judgment is Juan's prior experience with the juvenile justice system. (*Mosby*, *supra*, 33 Cal.4th at p. 365.) According to the probation officer's social study, Juan had a prior juvenile adjudication stemming from two separate incidents. In December 2010 he was charged with one count of grand theft (Pen. Code, § 487, subd. (a)) and one count of burglary (Pen. Code, § 459) after he and a companion stole a 32-inch flat screen television from a parked delivery truck. In February 2011 he was charged with one count of theft (Pen. Code, § 484) and one count of breaking or removing vehicle parts (Veh. Code, § 10852) after he and a companion entered a parked vehicle and attempted to remove the stereo. The court disposed of the charges in March 2011 by making true findings on the grand theft and theft charges and dismissing the remaining charges with a waiver under *People v. Harvey* (1979) 25 Cal.3d 754 (*Harvey* waiver).[3] The existence of the *Harvey* waiver

---

[3] The *Harvey* waiver allowed the court to consider Juan's entire criminal history, including any unfiled or dismissed charges, for disposition purposes. (*People v. Snow* (2012) 205 Cal.App.4th 932, 936-937.)

indicates Juan admitted the two charges for which the court made true findings. We may infer he received *Boykin-Tahl* advisements before these admissions and, consequently, has been aware of his *Boykin-Tahl* rights since then. (See *Mosby*, *supra*, 33 Cal.4th at p. 365.)

We further note at the time of the adjudication in this case, Juan was almost 18 years old, had completed high school, and was not receiving any special education or mental health services. In addition, his voluntary remarks at the readiness hearing about possibly changing his plea show both a sophisticated understanding of the juvenile justice system and the capacity to assert rights when necessary. Other remarks he made on the record and to the probation department, while not directly related to his *Boykin-Tahl* rights, show similar sophistication and capacity. We, therefore, conclude under the totality of the circumstances he voluntarily and intelligently admitted the violation of Penal Code section 148 despite being advised of and having waived only his right to a trial. (*Mosby*, *supra*, 33 Cal.4th at p. 365.)

II

*Constitutionality of Use of Force Probation Condition*

Juan contends, the People concede and we agree the use of force probation condition is unconstitutionally overbroad because it precludes Juan from engaging in lawful self-defense, which is protected by article 1, section 1 of the California Constitution. (*In re Sheena K.* (2007) 40 Cal.4th 875, 890 [a probation condition limiting a person's constitutional rights must be closely tailored to the purpose of the limitation to avoid being unconstitutionally overbroad]; *People v. Freitas* (2009) 179 Cal.App.4th 747,

7

750 [a probation condition may be overbroad if it prohibits constitutionally protected conduct].) Accordingly, we shall direct the court to modify the condition to state, "The minor is not to use force, threats, or violence on another person except in lawful self-defense."

## DISPOSITION

The court is directed to modify the use of force probation condition it imposed to state, "The minor is not to use force, threats, or violence on another person except in lawful self-defense." In all other respects, the judgment is affirmed.


McCONNELL, P. J.

WE CONCUR:

HUFFMAN, J.

AARON, J.